CECILY A. WATERMAN, State Bar No. 063502
JENNIFER A. LOCKHART, State Bar No. 236972
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001

Attorneys for Defendants
BOSTON SCIENTIFIC CORPORATION, JAMES
TOBIN, WILLIAM R. ROSKOPF, JENNIFER A.
HEGNER AND THOMAS J. O'CONNELL, JR.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WILLIAMS,<br><br>Plaintiff,<br><br>vs.<br><br>BOSTON SCIENTIFIC CORPORATION, JAMES TOBIN, WILLIAM R. ROSKOPF, JENNIFER A. HEGNER AND THOMAS J. O'CONNELL, JR., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:08-CV-01437-JL<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR MOTION TO STAY PROCEEDINGS PURSUANT TO FRCP 12(b)(1), AND/OR, IN THE ALTERNATIVE, TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

Defendants Boston Scientific Corp., James Tobin, William Roskopf, Jennifer Hegner and Thomas J. O'Connell, Jr., ("Defendants") hereby request that this Court take Judicial Notice of the following document pursuant to Federal Rule of Evidence 201:

1. Plaintiff Eric Williams' November 12, 2007 Complaint to the U.S. Occupational Health and Safety Administration, a copy of which is attached hereto as Exhibit "A."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-PA/3693816.1

Case No. 3:08-CV-01437-JL

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

| | | |
|---|---|---|
| 1 | Dated: March 18, 2008 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | |
| 3 | | By _____ |
| 4 | | Cecily A. Waterman<br>Attorneys for Defendants |
| 5 | | BOSTON SCIENTIFIC CORPORATION,<br>JAMES TOBIN, WILLIAM R. |
| 6 | | ROSKOPF, JENNIFER A. HEGNER<br>AND THOMAS J. O'CONNELL, JR. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-PA/3693816.1                    2                    Case No. 3:08-CV-01437-JL

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

# EXHIBIT A

**U.S. Department of Labor**  Occupational Safety & Health Administration
90 7th Street Suite 18100
San Francisco, CA 94103



November 26, 2007

Jim Tobin
President and CEO
Boston Scientific Corporation
One Boston Scientific Place
Natick, MA 01760-1537

Re:   Boston Scientific Corporation, et al. / Williams / Case No. 9-3290-08-005

Dear Mr. Tobin:

We hereby serve you notice that a complaint has been filed with this office by Eric Williams (Complainant) alleging discriminatory employment practices in violation of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. 1514A (SOX). A copy of the complaint is enclosed. The relevant regulation, 29 C.F.R. Part 1980, is available at http://www.osha.gov/dep/oia/whistleblower/index.html. Please contact the investigator below if you cannot access this website.

The complaint, supplemented as appropriate by interviews with Complainant, will be dismissed if we determine that Complainant has not made a prima facie showing that protected activity was a contributing factor in the unfavorable personnel action alleged in the complaint. (See 29 C.F.R. 1980.104(b)). The complaint also will be dismissed if Complainant has made a prima facie showing, but we determine that you have demonstrated by clear and convincing evidence that you would have taken the same unfavorable personnel action in the absence of the complainant's protected activity. (See 29 C.F.R. 1980.104(c)).

You may, within 20 days of your receipt of this complaint, submit to this agency a written account of the facts (a statement of your position) and any affidavits or documents explaining or defending your position. Within the same 20 days you may request a meeting to present your position.

In your statement of position, please provide information and copies of the employee records and documents requested below to the Investigator assigned to this complaint:

- A copy of Mr. Williams' personnel records including, but not limited to, the dates of employment, last rate of pay, job title, a written position description, completed performance evaluations, and any letters of counsel, reprimand or commendation;

- The name(s) and job title(s) of the individual(s) who made the termination and/or lay-off decision;

- A copy of the letter or notice of termination of employment and/or all documents related to the adverse employment action(s);

- Whether Mr. Williams made any complaints about the company committing mail, wire, bank, or securities fraud, violating the Sarbanes-Oxley Act itself, violating any rule or regulation of the Securities and Exchange Commission, or violating any provision of federal law relating to fraud against shareholders. If so, describe the nature and outcome of the concerns;

- All documents related to Mr. Williams' complaint(s) about the company committing mail, wire, bank, or securities fraud, violating the Sarbanes-Oxley Act itself, violating any rule or regulation of the Securities and Exchange Commission, or violating any provision of federal law relating to fraud against shareholders. Documents can include written complaints, correspondence, electronic mail, copies of meeting minutes, notes, etc.;

- A list of employees who have been disciplined, discharged, or laid-off within the last 2 years. Please include the employee's name, job title, date of hire, date of discharge, discipline, or lay-off, and reason(s) for discharge, discipline, or lay-off;

- A copy of the company's policy for reporting concerns regarding fraudulent behavior, violations of the Sarbanes-Oxley Act itself, and/or violations of the Securities and Exchange Commission;

- Whether the company has a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) and/or is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)). If not, please describe the company's corporate relationship to any other company, including but not limited to, a parent corporation and/or company, which has a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) and/or is required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d)).

If investigation provides this agency with reasonable cause to believe that the Act has been violated and reinstatement of Complainant is warranted, you will again be contacted prior to the issuance of findings and a preliminary order, at which time you will be advised of the substance of the relevant evidence supporting Complainant's allegations, and you will be given the opportunity to submit a written response, to meet with the investigator to present statements from rebuttal witnesses, and to present legal and factual arguments. (See 29 C.F.R. 1980.104(e)).

You have the right to be represented in this matter. In the event you choose to have a representative appear on your behalf, please have your representative complete the enclosed Designation of Representative form and forward it promptly to the assigned investigator. All communications and submissions should be made to the investigator assigned below. Please note that a full and complete initial response, supported by appropriate documentation, together with full cooperation with this office, may serve to help achieve early resolution of this matter.

We must also inform you that, after the issuance of findings and a preliminary order, you may request reasonable attorney's fees not exceeding $1,000 from the Department of Labor's Office of Administrative Law Judges or Administrative Review Board, as appropriate, upon demonstrating that the complaint was frivolous or brought in bad faith. (See 29 C.F.R. 1980.106(a) and 1980.110(e)).

OSHA encourages the early resolution of complaints through voluntary settlement if the parties are amenable. Settlement may allow you to avoid expensive costs such as attorney fees and prevent a potentially lengthy investigation and appellate process. Please note that settlement of complaints can be effected at any time.

Finally, OSHA may, at its discretion, disclose to the parties in this case any information relevant to the resolution of the case, as evidence submitted by the parties must be tested and the opposing party provided the opportunity to fully respond. If information provided contains personal, identifiable information about individuals other than Complainant, such information, where appropriate, will be redacted before disclosure. We encourage the parties to exchange with each other copies of any documents or evidence filed with the agency, in order to facilitate the timely resolution of the complaint.

Sincerely,

*Joshua B. Paul*
Regional Supervisory Investigator

Enclosures:  Copy of Complaint
             Designation of Representative

Investigator:

Nicholas Sebastian
Regional Investigator
U.S. Department of Labor
OSHA
1301 Clay Street, Suite 1080N
Oakland, CA 94612
510-637-3831
510-637-3846 fax
sebastian.nicholas@dol.gov



Katherine R. Brouwer
Direct Dial 202.261.2811
kbrouwer@employmentlawgroup.net

November 12, 2007

**VIA FACSIMILE AND FEDERAL EXPRESS**

Len Welsh, Acting Chief, Cal/OSHA
1515 Clay Street, Suite 1901
Oakland, California 94612
(510) 286-7000
(510) 286-7037 FAX

    Re:    *Eric Williams v. Boston Scientific Corporation, et al.*

Dear Mr. Welsh,

    Please accept for filing Mr. Williams's pro se complaint against Boston Scientific Corporation and Jim Tobin under Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"). The Employment Law Group is not presently representing Mr. Williams in this matter, but merely assisting with the filing of the enclosed complaint.

    If you have questions, please contact Mr. Williams directly by telephone: (510) 453-8810, e-mail: elw1@comcast.net, or by mail: 157 Caprice Circle, Hercules, California 94574.

                                    Very Truly Yours,
                                    The Employment Law Group, PC

                     By:   *Kath R Brouw*

                                    Katherine Brouwer

11/12/2007 15:31 FAX 202 261 2835          THE EMPLOYMENT LAW GROUP                     ☒002

U.S. DEPARTMENT OF LABOR
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

|  |  |
|---|---|
| ERIC WILLIAMS, ) | |
| ) | |
| Complainant, ) | |
| ) | |
| v. ) | Case No._____ |
| ) | |
| BOSTON SCIENTIFIC CORPORATION, ) | |
| AND JIM TOBIN, ) | |
| ) | |
| Respondents. ) | |

COMPLAINT FOR RELIEF
UNDER THE CORPORATE AND CRIMINAL
FRAUD ACCOUNTABILITY ACT OF 2002, 18 U.S.C. § 1514A

INTRODUCTION

1. Complainant Eric Williams ("Williams"), files this Complaint of whistleblower discrimination before the Department of Labor pursuant to the employee protection provisions of the Sarbanes-Oxley Act of 2002 ("SOX"), against Boston Scientific Corporation and Jim Tobin (collectively "Respondents").

2. Beginning in August of 2005 and continuing into October of 2007, Williams persisted in raising concerns about Respondents' misleading and incomplete public disclosures and Respondents' deficient internal controls and failure to comply with the books and records provisions of the Securities Exchange Act of 1934.

3. In retaliation for Williams' protected conduct, Respondents denied Williams a promotion and ultimately terminated his employment.

11/12/2007 15:31 FAX 202 261 2835          THE EMPLOYMENT LAW GROUP                    ☒003

## PARTIES

4.  Complainant Eric Williams is domiciled in Hercules, California, and served as the Manager of Marketing Communications ("MarCom") for Boston Scientific Corporation ("BSC") from December 6, 1999 to November 9, 2007.

5.  Respondent BSC is a Massachusetts corporation headquartered in Natick, Massachusetts. BSC's corporate Neurovascular division is located in Fremont, California. BSC is a worldwide developer, manufacturer and market of medical devices for medical specialties including, *inter alia*, neurovascular intervention.

6.  Respondent Jim Tobin ("Tobin") is President and Chief Executive Officer of BSC, ultimately had control over Williams' employment, and took adverse actions against Williams in retaliation for Williams' protected activities.

## JURISDICTION

7.  Respondent BSC is subject to Department of Labor jurisdiction under Section 806 of SOX in that during the times material to this action, BSC was a publicly traded company subject to the periodic reporting requirements of Section 15(d) of the Securities Exchange Act of 1934.

8.  Respondent Tobin is subject to Department of Labor jurisdiction under Section 806 of SOX in that he is an officer of BSC who violated Section 806 of SOX.

## FACTS

1.  The aforementioned paragraphs are adopted and incorporated herein by reference.

11/12/2007 15:31 FAX 202 261 2835        THE EMPLOYMENT LAW GROUP                    ☒004

2.    Williams was employed by BSC from December 6, 1999 through November 9, 2007 as the Manager of MarCom for BSC.

3.    From 1999 through 2004, Williams always received very high merit increases and bonuses.

4.    In 2005 and 2006, after Williams disclosed the PSST Fraud defined and described below, Williams' supervisors downgraded his performance ratings and paid him greatly reduced merit increase and bonuses.

5.    BSC's operations are regulated pursuant to the Federal Food, Drug, and Cosmetic Act ("the Act") and regulations promulgated thereunder. *See* 21 U.S.C. §§ 331, 351(a)(2)(B); 21 C.F.R. §§ 210, 211, and 212. The regulations establish a complex scheme that, among other things, requires current good manufacturing practices by all manufacturers of medical products. *Id.*

6.    The Food and Drug Administration ("FDA") administers the Act and regulates corporations subject to it.

7.    To comply with the Act, BSC has established several codes of ethics, including, but not limited to, the Corporate Integrity Program, the Code of Business Conduct, the Corporate Governance Guidelines and, by adoption, the AdvaMed Code of Ethics (collectively, the "BSC Codes of Ethics").

8.    Consistent with the BSC Codes of Ethics (specifically section 4 of the Code of Business Conduct and the section of the Corporate Integrity Program entitled "The Quality of Our Products, Work and Research"), BSC requires that all promotional materials, sales support material, and training material (collectively, the "PSST") for BSC medical products

3

11/12/2007 15:31 FAX 202 261 2835         THE EMPLOYMENT LAW GROUP                        ☒005

must be reviewed and approved by MarCom, Legal and Regulatory Affairs and other departments, as appropriate, prior to distribution (the "PSST Review Process").

9. Beginning in August of 2005, and continuing through October of 2007, Williams advised BSC executives and management, verbally and in writing, of repeated violations of the PSST Review Process in which numerous PSST documents were published, distributed and used in connection with sales presentations, employee training, resource information for medical professional, customer training and customer information, without appropriate review and/or approval (the "PSST Fraud").

10. For example:

   a. On or about August 21, 2005, prior to the commencement of the 2005 BSC National Sales Meeting ("2005 NSM"), Williams informed Todd Pope, Vice President of Sales and Marketing, and Katherine Mack, Director of Marketing, that numerous training and sales materials related to the Matrix 2 product had not complied with the PSST Review Process. Williams' warnings went unheeded and the materials were distributed un-reviewed.

   b. On October 23, 2005, Williams sent email to the Vice President of Corporate Security regarding the 2005 NSM PSST Review Process violations.

   c. On January 17, 2006, Williams met with Abe Mathews, the Vice President of Regulatory Affairs, and ███████████ from the Office of Corporate Compliance, and disclosed several hundred suspicious documents that appeared to have been produced, distributed and utilized without review in violation of the PSST Review Process. No legitimate investigation was made and no other corrective or preventative action was taken.

11/12/2007 15:32 FAX 202 261 2835       THE EMPLOYMENT LAW GROUP                    ☒006

d. On or about January 29, 2006 through February 3, 2006, at the 2006 BSC National Sales Meeting, Williams discovered and pulled from disclosure over 18 non-compliant un-reviewed sales presentations and related material. Williams disclosed these "near misses" to BSC management - no legitimate action was taken.

e. On or about June 12, 2006, during and internal audit, Williams disclosed to the BSC internal auditor hundreds of violations of the PSST Review Process in which documents were: i) produced and used without review, ii) used without incorporating edits required during the PSST Review Process, and/or iii) used after being rejected during the PSST Review Process. No action was taken with respect to these disclosures.

f. On or about October 1, 2006 through October 4, 2006, during a BSC Sales Training Meeting, Williams disclosed numerous violations of the PSST Review Process with respect to documents used at that meeting, including an in-service presentation for BSC's Neuroform3 product which had never been reviewed. No action was taken with respect to these disclosures.

g. In October, 2006, Williams sent several emails to Jim Gilbert, Executive Vice President, and Tobin, reporting hundreds of violations of the PSST Review Process. No action was taken with respect to these disclosures.

h. On or about November 29, 2006, Williams reported to BSC management 409 violations of the PSST Review Process with respect to un-reviewed documents present on the BSC sales extranet. No legitimate preventative action was taken with respect to these disclosures.

    i. On or about April 2, 2007, Williams provided to management a summary of hundreds of "At Risk" and "Black Hole" documents – documents that had either gone un-reviewed or the review status of which was unknown. No legitimate investigation was taken with respect to these disclosures.

    j. On or about April 4, 2007, Williams met with Milt McColl, President, and Steve Hanlon, Vice President Pro Tem, to discuss the PSST Fraud. Williams sent a follow up email detailing his concerns to them. No legitimate action was taken with respect to these disclosures.

    k. On or about May 7, 2007, Williams reported numerous violations of the PSST Review Process during a "Brain Training" Sales Meeting conducted in Fremont, California. In response, Williams' then supervisor, Bill Roskopf, Vice President of Marketing ("Roskopf") sent Williams email threatening Williams and stating that his disclosure activities would likely prohibit him from being considered as a candidate for his newly approved Director, Events/Communication Programs position.

    l. On or about October 10, 2007, Williams reported to the Vice President of Regulatory Affairs a significant violation of the PSST Review Process with respect to un-reviewed sales training materials used at the October, 2007 "Brain Training" meeting. No action was taken with respect to these disclosures.

11. The violations of the PSST Review Process described above constitute repeated and intentional violations of the Act and regulations promulgated thereunder, and can subject

6

11/12/2007 15:32 FAX 202 261 2835        THE EMPLOYMENT LAW GROUP                    ☒008

BSC to various and substantial fines, penalties and forfeiture, greatly affecting BSC shareholders.

12. On or about January 26, 2006, the FDA issued BSC a corporate warning letter notifying BSC of serious regulatory problems at three of its facilities (the "Warning Letter").

13. BSC disclosed the Warning Letter and that an investigation was pending in its annual report filed with the SEC on or about March 31, 2007.

14. BSC failed to disclose the PSST Fraud, the extent of the violations, that the seriousness of the violations could lead to claims under the False Claims Act, or the possibility of revocation of its FDA licenses and ability to continue operations.

15. In response to the Warning Letter, BSC initiated an internal investigation in late 2006 ("the Investigation").

16. BSC asked Williams to assist in the Investigation, and Williams provided substantial assistance in the Investigation.

17. For example:

   a. On or about October 25, 2006, Williams met with ▇▇▇▇▇▇▇▇▇▇ an attorney with the law firm of ▇▇▇▇▇▇▇▇▇▇ and ▇▇▇▇▇▇▇▇▇▇ and, over a period of several hours, disclosed the PSST Fraud in great detail.

   b. On or about November 29, 2006, Williams met with ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇ from the law firm of ▇▇▇▇▇▇▇▇▇▇, and, again, over a period of several hours, disclosed the PSST Fraud in great detail.

18. BSC executives and management, including Tobin, disregarded William's disclosures, intentionally concealed the PSST Fraud and/or the extent and/or degree of the

7

PSST Fraud from shareholders, and actively and intentionally chose not to comply with the PSST Review Process and the BSC Codes of Ethics.

19. On or about June 14, 2007, Roskopf announced the availability of the Director, Events/Communication Programs position.

20. Williams, as Roskopf's direct report, was a natural fit for this new Director position which would also have represented a promotion for Williams.

21. Although Williams was interviewed, Roskopf refused to promote Williams and refused to offer him the Director position.

22. Roskopf's failure and refusal to promote Williams was in retaliation for Williams' disclosures of the PSST Fraud at the May 7, 2007 "Brain Training" meeting and otherwise, a protected activity.

23. Williams was terminated, ostensibly as part of a reduction in force, on or about November 9, 2007.

24. Williams' termination was in retaliation for Williams' disclosures of the PSST Fraud, a protected activity.

25. BSC's retaliation against Williams by refusing to promote him and ultimately terminating him also violated BSC's own Codes of Ethics (specifically, the "No Retaliation Policy" as stated in the Corporate Integrity Program and section 10.3 of the Code of Business Conduct, which states: "No one will be subject to retaliation because of a good faith report of suspected misconduct or a good faith question or concern about any ethical or legal issue.").

## CLAIM FOR RELIEF

8

26. Williams hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

27. Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Exchange Act Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, prohibit a company from, inter alia: employing any device, scheme or artifice to defraud; making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

28. Respondents misled investors and shareholders by failing to disclose and/or intentionally concealing and/or failing to fully disclose the full material impact of fraudulent activities within its organization and further misled investors and shareholders by publishing misleading information materially affecting BSC's financial condition.

29. Williams had an objectively reasonable belief Respondents' failure to disclose and/or intentional concealment of fraudulent activities within BSC was in violation of the BSC Codes of Ethics and was therefore inconsistent with "management's criteria" for conduct of the transactions, represented a failure to adequately protect the assets of the company; and was therefore a violation of the internal accounting controls and books and records provisions of the Securities and Exchange Act of 1934. Williams had reason to believe that BSC's violations of FDA rules was inconsistent with management's criteria as publicly stated in it ethics policy and in its periodic reports filed with the SEC. Consequently, Williams had reason to believe that BSC was in violation of the internal accounting control provisions of Section 13 of the Securities and Exchange Act of 1934. Also, because BSC's practice is

likely to have a material impact on a shareholder's perception of BSC, engaging in such practices without disclosure is likely a violation of Sections 101 and 303 of Regulation SK, and thereby a violation of the antifraud provisions of Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated by the SEC thereunder.

30. Williams' disclosures to BSC management, and ▬▬▬▬▬▬▬▬▬ in the course of his participation an investigation, about the PSST Fraud implicated violations of the books and records provisions of the Securities Exchange Act of 1934 and violations of the SEC's internal accounting control rules. In addition, Williams' disclosures about the PSST fraud and BSC's failure to comply with FDA rules implicated violations of federal laws relating to shareholder fraud

31. To enforce the various substantive prohibitions contained in the Food Drug and Cosmetic Act, the Act provides for injunctions, 21 U.S.C. § 332, criminal sanctions, §§ 333 and 335, and seizure of any offending food, drug, or cosmetic article, § 334. Williams reasonably believed that by failing to disclose to shareholders the substantial risk of sanctions and other enforcement action, BSC was failing to comply with its disclosure obligations under Section 10(b) of the Exchange Act and Rule 10b-5.

32. Williams also engaged in protected conduct by participating in an investigation of violations of SEC rules.

33. The complaints, disclosures, and information provided by Williams to BSC management, and Williams' participation in an investigation, as set forth above, constituted protected activity under the employee protection provisions of Section 806(a)(1) and (2) of SOX, 18 U.S.C. § 1514A(a)(1) and (2), which prohibit any adverse action against an employee who has taken, or was preparing to take, action "to provide information, cause information to

11/12/2007 15:32 FAX 202 261 2835        THE EMPLOYMENT LAW GROUP                    ☒012

be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of... *any rule or regulation of the Securities and Exchange Commission,* or any provision of Federal law *relating to* fraud against shareholders\*\*\*" (emphasis added.) Raising complaints and concerns to managers about "any rule or regulation of the [SEC]", and/or "any provision of Federal law relating to fraud against shareholders" is protected activity under Section 806.

34. In retaliation for Williams raising concerns about inaccurate and incomplete representations to investors and participation in an investigation related thereto, and BSC's failure to carry out its activities and operations in compliance with the Act and its own Codes of Ethics, Respondents failed to promote Williams and ultimately terminated his employment.

35. Respondents' considerations of Williams' protected activity, as set forth above, was a contributing factor in the close temporal proximity of the denial of promotion and termination of his employment in violation of Section 806 of SOX and in violation of BSC's own Codes of Ethics.

36. As a direct, proximate, and foreseeable result of Respondents' retaliation, Williams has suffered loss of income, damage to his career, and emotional, mental, and physical distress and anxiety. He is entitled to equitable, front pay and back pay, economic and non-economic damages. Because the actions of Respondents in violating Section 806 were aggravated and willful, Williams is also entitled to punitive damages.

## PRAYER FOR RELIEF

Based on the foregoing, Williams respectfully requests that he be awarded the following relief:

11

11/12/2007 15:33 FAX 202 261 2835        THE EMPLOYMENT LAW GROUP                    ☒013

a. Economic damages for lost wages and benefits, and damage to his career and earning capacity in an amount to be determined at trial;

b. Non-economic damages for mental and emotional distress, embarrassment and humiliation, or an amount to be determined at trial;

c. Exemplary damages, if found to be available under the statute, in an amount sufficient to deter Respondents from similar retaliatory conduct toward other similarly situated employees;

d. Reasonable costs and fees, together with all other relief available in law and equity.

Respectfully Submitted,

*[signature]*

Eric Williams